UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ANGEL JAMES FISHER,

    Plaintiff,

v.                                            Case No. 5:16cv108/WTH/CJK

CHARLES B. JONES, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This prisoner civil rights case, filed under 42 U.S.C. § 1983, is before the court upon defendants' motion for partial summary judgment and evidentiary materials. (Docs. 56, 65). Defendants seek summary judgment on three issues. (Doc. 56). Plaintiff responded in opposition with evidentiary materials. (Doc. 77). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). After careful consideration, the undersigned concludes that there is no genuine dispute of material fact on any of the three issues summary judgment is sought, and that defendants are entitled to judgment as a matter of law on those issues.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Fisher is an inmate of the Florida penal system currently confined at Gulf Correctional Institution. Fisher was confined at Northwest Florida Reception Center (NWFRC) at the time of the events giving rise to this lawsuit. (Doc. 1). Fisher is suing three NWFRC officials in their individual capacities: Sergeant Charles Jones, Captain Shuler, and Corrections Officer David Pieknik. (Doc. 1 at 2, 11 in ECF).[1] Fisher claims that on July 23, 2015, Jones, Shuler and Pieknik retaliated against him and used excessive force on him in violation of the First and Eighth Amendments. (Doc. 1 at 11). As relief, Fisher seeks compensatory damages, punitive damages, injunctive relief in the form of "proper medical treatment", and "all relief this court deems just and equit[a]ble by law." (Doc. 1 at 11-12).

Defendants move for partial summary judgment on three issues: (1) Fisher's claim for injunctive relief; (2) Fisher's claims for compensatory and punitive damages; and (3) Fisher's claim against Shuler and Pieknik for Jones' use of additional force in shoving Fisher while shackled and slamming his ankle with the cell door. (Doc. 56 at 1, 8-21). Fisher's response denies that he is seeking injunctive relief, and opposes defendants' remaining arguments. (Doc. 77 at 1-39).

---

[1] The page numbers cited in this Report refer to numbers assigned by the court's electronic docketing system, rather than those the parties may have designated.
Case No. 5:16cv108/WTH/CJK

## FACTS

The following facts are drawn from the evidence in the summary judgment record (doc. 56, Attach.; doc. 65; doc. 77, Attach.), and from those allegations of Fisher's verified complaint (doc. 1) that may be considered on summary judgment.[2] This statement of facts does not include factual statements made in Fisher's summary judgment response (doc. 77), because the response is neither verified, sworn, nor accompanied by a sworn affidavit of Fisher. *See Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (holding that district court properly declined to consider unsworn affidavit filed in support of § 1983 plaintiff's motion to alter or amend judgment) (*citing Holloman v. Jacksonville Housing Auth.*, 2007 WL 245555 at *2 (11th Cir. 2007) ("unsworn statements, even from *pro se* parties, should not be 'consider[ed] in determining the propriety of summary judgment'" (*quoting Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980)))). Where the parties offer conflicting accounts of the events in question, the court "sets forth the facts, drawn from the evidence presented, in the light most favorable to the plaintiff." *See Snow ex rel.*

---

[2] "A *pro se* plaintiff's complaint, . . . if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence. Nevertheless, '[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge.'" *Howard v. Memnon*, 572 F. App'x 692, 694 (11th Cir. 2014) (*citing Murrell v. Bennett*, 615 F.2d 306, 310 n.5 (5th Cir. 1980), *and quoting* Fed. R. Civ. P. 56(c)(4)) (footnote omitted). Conclusory statements are inadmissible because they are not based on personal knowledge. *Lloyd v. Card*, 283 F. App'x 696, 701 (11th Cir. 2008) (*citing Marshall v. City of Cape Coral, Fla.*, 797 F.2d 1555, 1559 (11th Cir. 1986) ("inferences based upon speculation are not reasonable")).

*Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005).  Matters stated below as "facts" for purposes of summary judgment review may not be the actual facts.  *See Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

On July 23, 2015, Fisher was housed in the confinement unit in dorm G2, cell 102.  (Doc. 1, Compl. at 5 ¶ 1).  Defendant Sergeant Jones ("Jones") was serving the noon meal trays.  (*Id.* at 5 ¶ 2).  Jones refused to give Fisher a tray because Fisher was not wearing a shirt when Jones arrived.  (*Id.* at 5 ¶ 3).  When Fisher asked to speak to the captain about the issue, Jones "began being verbally aggressively [sic] toward me [Fisher], making false allegations that I called him out of his name."  (*Id.* at 5 ¶ 4).  Jones told Fisher he would issue him a disciplinary report and would not allow him to speak to the captain.  (*Id.* at 6 ¶ 4).  Fisher responded that he received a distressing letter from his mother and "did not want any problems".  (*Id.* at 6 ¶ 5).  Fisher then announced from his cell door:  "I call all cameras and dorm audio to witness this officer rejecting my tray and being verbally aggressive towards me."  (*Id.* at 6 ¶ 6).

Defendant Captain Shuler ("Shuler") responded to Fisher's cell front and told Fisher he would give him his meal tray if Fisher kept quiet.  (*Id*. at 6 ¶ 7).  After Fisher received his tray, Jones returned to Fisher's cell door and told Fisher he would issue him a second DR, this time for verbally threatening an officer.  (*Id.*).  Fisher

again called for Shuler and, when Shuler arrived, told Shuler about the distressing letter from his mother and Jones' threats of disciplinary action. (*Id.* at 6 ¶ 8). Shuler warned Fisher that if he kept calling for him he would "gas" Fisher, meaning, spray him with pepper spray. (*Id.* at 6-7 ¶ 8).

Fisher then declared a psychological emergency. (*Id.* at 7 ¶ 9). After Shuler claimed Fisher refused to see the mental health counselor, Fisher announced: "I call all audio that I did not refuse my psychological emergency." (*Id.* at 7 ¶ 10). Shuler ordered a mental health counselor to counsel Fisher at his cell front. (*Id.*).

When counseling concluded, Shuler stationed defendant Officer Pieknik ("Pieknik") at Fisher's cell front and instructed Pieknik to notify him if Fisher made any noise. (*Id.* at 7 ¶ 11). Although Fisher sat quietly in his cell, Pieknik nonetheless verbalized orders for Fisher to stop yelling into the dorm. (*Id.* at 7 ¶ 12). In Fisher's view, Pieknik did this to manipulate audio and video surveillance to make it appear Fisher was being disruptive. (*Id.* at 7-8 ¶ 13).

When Shuler returned to the area, Pieknik falsely reported to Shuler that Fisher was being loud and disruptive. (*Id.* at 8 ¶ 14). Shuler then yelled for Fisher to cease his disruptive behavior. (*Id.*). Fisher contends he was doing nothing but "standing, looking puzzled". (*Id.*). Shuler ordered Fisher's cellmate, Brett Elliott, to cover himself with a blanket, and then ordered officers to spray pepper spray into

the cell.  (Doc. 1 at 8 ¶¶ 16-17; Doc. 65 at 2:09 pm).[3]  Approximately 5 minutes after the chemical agent was applied, officers cuffed Fisher's and Elliot's hands behind their backs, opened the cell door, and escorted Elliot from the cell.  (Doc. 1 at 8 ¶ 18; Doc. 65 at 2:16).  Fisher complied with an order to kneel while Jones applied ankle restraints.  (Doc. 1 at 9 ¶ 20; Doc. 65 at 2:16:20 – 2:16:53).  Shuler observed the shackling and then left the cell area.  (Doc. 65 at 2:16:54).  According to Fisher, Jones then shoved Fisher while he was still kneeling, causing Fisher to fall and hit the toilet.  (Doc. 1 at 9 ¶ 20).  Jones then "slammed" the cell door against Fisher's right ankle, which was between the cell door and the door frame.  (*Id.* at 9 ¶ 20).  Neither Shuler nor Pieknik was present, or in the immediate vicinity, when Jones shoved Fisher and slammed his ankle.  (Doc. 65 at 2:16:54 – 2:17:17).  When Fisher began yelling that Jones hit his ankle with the cell door, Shuler briefly re-entered the scene and then left again.  (*Id.* at 2:17:22).  Shuler re-entered the area again at 2:25 pm, accompanied by Pieknik who recorded post-use-of-force events with a handheld camera.  (*Id*. at 2:25:43).

---

[3] Doc. 65, filed under seal, is a fixed-wing video clip (with audio) from July 23, 2015, depicting a portion of the use-of-force incident involving Fisher (IG incident #15-16654), and covers the time frame 2:08:27 pm - 2:26:00 pm).  Defendants acknowledge that this clip is only a portion of the available video and audio of the incidents and that the clip is submitted for the limited purpose of their third defense (to show that Shuler and Pieknik were not present during the collateral incident between Jones and Fisher).  (*See* Doc. 75).  Defendants state that once this case proceeds past the summary judgment stage, they will provide plaintiff an opportunity to review all video for the case.  (*Id.*).

Fisher was escorted to a decontamination shower. (Doc. 1 at 9 ¶ 23). At the shower, Fisher removed his clothes and complained to the camera that he was assaulted. (*Id.* at 9-10 ¶ 23). Shuler ordered Fisher to be quiet or he would be sprayed again. (*Id.* at 10 ¶ 24). Fisher repeated his complaint to the camera. (*Id.* at 10 ¶ 25). Shuler handed the pepper spray to an officer and ordered him to spray Fisher. (*Id.*). The officer sprayed Fisher. (*Id.*). Fisher was given a disciplinary report for creating a disturbance. (*Id.* at 10 ¶ 26).

Fisher was taken to the medical department for a post-use-of-force examination. (Doc. 56, Ex. E at 64-65 in ECF). Fisher complained of pain in his right ankle and of his face burning. (*Id.*). SLPN Jones, who conducted the assessment, noted quick unlabored breathing and superficial abrasions below the level of the ankle restraints over Fisher's posterior left and right Achilles tendons without attendant bone injury or deformity. (*Id.*). The abrasions ceased bleeding during the examination. (*Id.*). SLPN Jones did not note any other manifest injuries, and determined that the only necessary treatment was a saline wash to Fisher's face and one eye. (*Id.*). The wash relieved the irritation to the face and eye. (*Id.*).

After the July 23, 2015, assessment, Fisher repeatedly complained of back pain starting on approximately September 6, 2015. (Doc. 77, Ex. B; *see also* Doc. 56, Ex. E at 19-26, 30-33, 37-54). Complete radiology studies of Fisher's cervical,

thoracic, and lumbosacral spine were performed on September 21, 2015, and again on September 19, 2016. (Doc. 56, Ex. E, Maier Decl. ¶ 6 and Attach. at 20-22, 30, 38, 51, 67-70). Fisher's treating physicians discerned no clinical findings consistent with back or spinal trauma. (*Id.*). In addition, Fisher's treating physicians found that despite Fisher's claim of degenerative disk disease, the radiology studies did not support this "apparent self-diagnosis." (Doc. 56, Ex. E at 30). Fisher's medical records contain no complaints or requests for medical treatment relating to an ankle injury or scar, except during the post-use-of-force exam. (*See* Doc. 56, Ex. E).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). In applying this standard, the court must view the facts in the light most favorable to the non-moving party (here, the plaintiff) and draw all reasonable inferences in favor of that party. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See id*. An issue is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *Id*.

## ANALYSIS

Injunctive Relief

Fisher's complaint requests injunctive relief in the form of "proper medical treatment from pain in back as a result of the incident explained in this proceeding." (Doc. 1 at 12). Jones, Shuler and Pieknik assert that Fisher cannot recover this relief because: (1) they are security personnel with no authority to make decisions about, or effectuate, Fisher's medical care; (2) there are no medical defendants in this action; (3) an injunction can only be sought through an official capacity claim; and (4) any claim for injunctive relief against Jones, Shuler and Pieknik individually was mooted by Fisher's transfer from NWFRC. (Doc. 56 at 10-12). Fisher responds:

> Contrary to the statements made in Defendants' motion for summary judgment, Plaintiff does not seek any injunctive relief at all, but only that the Defendants be held reliable [sic] for the cost and medical

> payments of Plaintiff to find effective medical treatment, as D.O.C. is not or have done all they could do within their power.
>
> . . . .
>
> Furthermore, Defendants cannot seek this court to deny injunctive relief where Plaintiff never asked for injunctive relief, nor is Plaintiff seeking injunctive relief, but only that Defendants be held reliable [sic] for the cost of all and any medical treatment, and as relief sought, that Plaintiff be awarded the opportunity to address his back injury with a private doctor. Plaintiff has not moved this court to order injunctive relief, nor has he filed any motion of injunction for the Defendants to object to. The interp[re]tation of Defendants is at miss [sic] on this matter.

(Doc. 77 at 5, 7). Given Fisher's position that he is not seeking any injunctive relief, the court should dismiss as abandoned any request for injunctive relief that may be construed from the complaint.

<u>Compensatory and Punitive Damages</u>

Fisher seeks compensatory damages in the amount of $50,000 each from Shuler and Jones, and $10,000 from Pieknik. Fisher seeks a comparable amount of punitive damages against each defendant. (Doc. 1 at 11). Defendants request summary judgment on these damages claims under 42 U.S.C. § 1997e(e), because Fisher suffered no more than a *de minimis* physical injury as a result of the incident. (Doc. 56 at 13-19). Fisher responds that summary judgment is inappropriate, because: (1) § 1997e(e) does not define "*de minimis*"; (2) the Eighth Amendment standard requires only that he show that force was applied in a malicious manner to

cause harm; and (3) he still suffers back pain from falling against the toilet. (Doc. 77 at 7-29).

The Prison Litigation Reform Act ("PLRA") provides, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. . . ." 42 U.S.C. § 1997e(e). The Eleventh Circuit interprets § 1997e(e) as prohibiting a prisoner from seeking compensatory and punitive damages in the absence of a physical injury that is more than *de minimis*. *Harris v. Garner*, 190 F.3d 1279, 1287-88 (11th Cir. 1999) ("*Harris* I"), *vacated in part and reinstated in relevant part on reh'g*, 216 F.3d 970 (11th Cir. 2000) ("*Harris II*") (affirming district court's dismissal, under 42 U.S.C. § 1997e(e), of prisoners' compensatory and punitive damages claims arising from prison officials' alleged unconstitutional conduct, where prisoners alleged no physical injury arising from that conduct); *Al-Amin v. Smith*, 637 F.3d 1192 (11th Cir. 2011) (holding that "the overall tenor of *Harris* and its progeny, when taken together, unmistakably supports" the conclusion that § 1997e(e) applies to constitutional claims and precludes the recovery of compensatory and punitive damages in the absence of the requisite physical injury).

The undisputed medical evidence establishes that (1) the effects of the chemical agents (irritation to the face and one eye) were minor, temporary and cured by washing; (2) the cell door incident left only a minor abrasion on Fisher's ankle that did not require treatment; and (3) Fisher did not sustain a back injury from falling against the toilet. With regard to the latter, the undisputed medical evidence establishes that "[c]omplete radiology studies of [Fisher's] cervical, thoracic, and lumbosacral spine were performed on September 21, 2015, and then again on September 19, 2016. Ultimately, there were no clinical findings consistent with back or spinal trauma that were discernable by his treating physicians." (Doc. 56, Ex. E, Maier Decl. ¶ 6 and Attach. at 20-22, 30, 38, 51, 67-70).

Fisher has not come forward with evidence that would enable a reasonable jury to find that he suffered more than a *de minimis* physical injury as a result of the uses of force on July 23, 2015. *See, e.g., Harris*, 190 F.3d at 1286-87 (finding that a "dry shave" was not a physical injury that was more than *de minimis*); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (finding that a bruised ear which lasted for three days was a *de minimis* injury); *Nolin v. Isbell*, 207 F.3d 1253, 1258 n. 4 (11th Cir. 2000) (finding that bruises received during an arrest were a *de minimis* injury); *Hill v. Crum*, 727 F.3d 312, 319 n.10 (4th Cir. 2013) (noting that "plaintiff suffered only *de minimis* injuries resulting from use of pepper spray" (citation

omitted)); *Brown v. Croce*, 967 F. Supp. 101, 104 (S.D. N.Y. 1997) (finding that two slaps to the face with no resulting injury were *de minimis*); *see also, e.g., Mann v. McNeil*, 360 F. App'x 31, 32 (11th Cir. 2010) (finding that "the injuries that [plaintiff] complain[ed] of – including the vague injuries to his back, the scrapes and marks on his knees and legs, the lack of personal items, the lapse of time in reordering medication, the window-cleaning assignment, and the discontinuance of his pass for showers twice a day – amount[ed] to *de minimis* physical injuries" thereby barring damages for mental anguish and suffering), *cert. denied*, 562 U.S. 1009 (2010); *Tate v. Rockford*, 497 F. App'x 921, 925 (11th Cir. 2012) (finding that "a laceration on [a prisoner's] forehead, several small abrasions and cuts, and a swollen right eye" are *de minimis* injuries). Even if successful on his claims, Fisher's monetary award, if any, must be limited to nominal damages.

<u>Shuler's and Pieknik's Liability for Jones' Shoving Fisher and Slamming His Ankle with the Cell Door</u>

Fisher's complaint alleges that Shuler "witnessed" Jones' shoving and slamming his ankle. (Doc. 1 at 9 ¶ 22). Defendants Shuler and Pieknik assert that to the extent Fisher claims they were present during, and liable for, this additional force by Jones, they are entitled to summary judgment because the video of the incident conclusively shows they were not present when it occurred. (Doc. 56 at 20). Fisher's allegation that Shuler witnessed Jones' force at the cell door is blatantly

contradicted by the video (doc. 65 at 2:16:54 – 2:17:17), and Fisher's summary judgment response does not dispute that Pieknik is not liable for Jones' use of force at the cell door.  (Doc. 77 at 36-39).  Based on the summary judgment record, a reasonable jury could not find Shuler or Pieknik liable (on either a theory of direct liability or a theory of failure to intervene) for Jones' shoving Fisher or slamming his ankle with the door.

In his summary judgment response, Fisher claims for the first time that Shuler is liable on a "failure to protect" theory, because he walked away from the cell door and left Jones alone with Fisher.  (Doc. 77 at 30-36).  Fisher may not, however, "amend" his complaint at the summary judgment stage by asserting a new theory of liability.  *See Hurlbert v. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (rejecting a new basis for a pending claim raised during summary judgment proceedings); *Chavis v. Clayton Cnty. Sch. Dist.*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (refusing to address a new theory raised during summary judgment because the plaintiff had not amended the complaint).

## CONCLUSION

Taking the summary judgment evidence in the light most favorable to Fisher, a reasonable jury could not find that Fisher suffered more than a *de minimis* physical injury to avoid § 1997e(e)'s limitation on damages.  Nor could a reasonable jury find

Shuler or Pieknik liable for Jones' pushing Fisher into the cell and slamming his ankle with the door.  Defendants are entitled to summary judgment in their favor on these two limited issues.  Any claim for injunctive relief that could be construed from Fisher's complaint is deemed abandoned.

Accordingly, it is respectfully RECOMMENDED:

1.   That defendants' motion for partial summary judgment (doc. 56) be GRANTED as follows:

> a.  Summary judgment be granted in favor of defendants Shuler, Jones and Pieknik on plaintiff's compensatory and punitive damages claims, and plaintiff's recovery in this action be limited to nominal damages.
>
> b.  Summary judgment be granted in favor of defendants Shuler and Pieknik on plaintiff's claim that they witnessed and failed to intervene in Jones' shoving Fisher and slamming his ankle with the cell door.

2.   That to the extent plaintiff's complaint may be liberally construed as requesting injunctive relief, such claim be DISMISSED as abandoned.

3.    That this case be remanded to the undersigned for further pre-trial proceedings on the following claims:

> a.  Plaintiff's claims against defendant Shuler for First Amendment retaliation and Eighth Amendment cruel and unusual punishment for Shuler's ordering the use of chemical agents.
>
> b.  Plaintiff's claims against defendant Jones for First Amendment retaliation and Eighth Amendment cruel and unusual punishment for Jones' threatening to file (and filing) a false disciplinary report, shoving

plaintiff while shackled, and slamming plaintiff's ankle with the cell door.

c.  Plaintiff's claim against defendant Pieknik for Eighth Amendment cruel and unusual punishment for Pieknik's falsifying a report that plaintiff was disruptive, knowing it would trigger the use of chemical agents.

At Pensacola, Florida this 13th day of December, 2017.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.